### Wallace v. Columbia Coal Company.

(Decided May 21, 1914.)

Appeal from Bell Circuit Court.

Master and Servant—Injury to Servant—Assumed Risk—Evidence—Peremptory.—Where plaintiff, a driver of a coal car, in leaning over to manipulate a switch lever while the car was in motion, lost his balance and fell against a post situated near the track, and sought to recover damages from his employer for negligently locating the lever so that he could not apprehend the danger of leaning over for the purpose of taking hold of it, evidence examined, and held, that the accident was not one that could have been anticipated by a person of ordinary prudence, but resulted from the performance of duties necessarily incident to plaintiff's employment, the risk of which he necessarily assumed, and that a peremptory instruction in favor of defendant was proper.

M. J. WELLER for appellant.

METCALF & JEFFRIES for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries by plaintiff, W. M. Wallace, against defendant, Columbia Coal Company, the trial court, at the conclusion of plaintiff's evidence, directed a verdict in favor of de-

fendant. To review the propriety of the court's action, plaintiff appeals.

The evidence shows that plaintiff, at the time of the accident, was a driver in defendant's employ, and was engaged in hauling coal from the drift mouth to the tipple. On the route there was a main track and side track. He was the only employe engaged in this work. He claims that in order to place the cars on the proper tracks and to save time in the performance of his work, he had been told to operate and adjust the switches along the tracks by means of levers while his mules and cars were in motion. On May 31, 1911, plaintiff was making a trip from the tipple to the drift mouth with two mules, one in front of the other, attached to eight empty coal cars which were from 34 inches to four feet high. When he came to the first switch going from the tipple he undertook to adjust the switch for the purpose of keeping on the main track, and in attempting to catch the lever while the cars were in motion lost his balance and fell over the side of the car. While trying to get back on the car the car passed a post about 25 feet from the switch. The post was about 14 inches from the track. While still in the act of trying to regain his balance he was caught between the post and the car and thrown to the ground, and received the injuries of which he complains. About a month before the accident plaintiff called the attention of the bank boss to the fact that the post leaned too near the track, and the bank boss had it fixed. When the accident occurred plaintiff was sitting on the edge of the front end of the car with his feet inside. The switch lever which he reached for and missed was curved away from the track, and was about 36 inches high. The levers at the other switches were from 42 to 44 inches high. When on the big cars he had to stoop over to reach the lever. When on the small cars this was not necessary. On cross-examination it developed that plaintiff made the trip between the tipple and the drift mouth about 50 times a day. He manipulated the switches, including the one in question, every time he passed by. On cross-examination witness stated that as he passed by with his legs and feet inside the car he tried to throw the switch and lost his balance. While it is customary to adjust the switch while the car is in motion, this was a matter which he did according to his own judgment. He had a right to stop and throw the

switch if he desired. He took the chances, and tried to throw the switch without stopping. It was customary, however, not to stop, and that was the way he was directed to do the work.

It will be observed that plaintiff knew of the location of the switch lever and of the post. He used the lever on an average of 50 times a day, and passed by the post the same number of times. It was necessary for the lever to be curved so that it would not come in contact with the car. Conceding that the top of the car was four feet from the ground, the lever was but a few inches below the top. While there is proof to the effect that the levers on the other switches were from six to eight inches longer than the one on the switch where the accident occurred, neither the plaintiff nor any other witness testified that the lever in question was too short for the purpose for which it was to be used. Nor is it shown that the lever was defective in any other respect. It is insisted for plaintiff that although he knew of the location of the lever, the evidence fails to show that he apprehended the danger of leaning over for the purpose of taking hold of the lever. We cannot agree with this contention. Any person of ordinary intelligence must be presumed to know that if he has his feet inside the car and leans out to far he is liable to lose his balance and fall. There being no evidence that the lever was defective, or was not reasonably safe for use under the particular circumstances, but it appearing that he used the lever about 50 times a day for a period of eight months, and the circumstances being such that he must be presumed to know the danger of falling if he lost his balance, we conclude that the risk attending the use of the lever was one ordinarily incident to his employment, and therefore assumed by him. Nor does the presence of the post between which and the car he was caught alter the case. It is not shown that the post was so near the track as to make it dangerous for the driver of the car, while performing his duties in the usual and customary way. It became dangerous in this instance only because plaintiff lost his balance and while swinging out over the car came in contact with it. The accident was not one that could have been anticipated by a person of ordinary prudence. It resulted entirely from the unexpected and unnatural position of plaintiff. Had plaintiff not lost his balance, and thereby

placed himself in a position to come in contact with the post, the accident would not have occurred. It follows that a peremptory in favor of the defendant was properly given.

Judgment affirmed.